IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MAGDALENA RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 112-160 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Magdalena Rodriguez ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I. **BACKGROUND**

Plaintiff applied for DIB on July 23, 2008, alleging a disability onset date of October 5, 2006. Tr. ("R"), pp. 119-20. The Social Security Administration denied Plaintiff's application initially, R. 57-60, and on reconsideration, R. 62-65. Plaintiff then

---

[1]For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

requested a hearing before the Administrative Law Judge ("ALJ"), R. 66-67, and the ALJ held a hearing on October 20, 2011. R. 32-50. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by a non-attorney representative, as well as from Robert Brabham, a Vocational Expert ("VE"). Id. The ALJ deferred asking any hypothetical questions to the VE until he received updated records from Plaintiff's physician regarding a recent screen for lupus, however the VE did testify that Plaintiff's prior work as an automation clerk at a hospital is classified by the Dictionary of Occupational Titles as "semiskilled work that is generally performed at the sedentary exertional level." R. 48-50. After receiving the records, the ALJ provided interrogatories to another VE, John D. Blakeman, to which he responded on March 3, 2012. R. 226-30. The ALJ proffered these interrogatories to Plaintiff and her representative on March 7, 2012, and Plaintiff responded through her representative on March 13, 2012. R. 231-32, 234-35. On April 18, 2012, the ALJ issued an unfavorable decision. R. 14-26.[2]

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 5, 2006, through her date last insured of December 31, 2011 (20 C.F.R. § 404.1571 *et seq.*).

2. Through the date last insured, the claimant had the following severe impairments: bilateral planter fasciitis and foot bursitis; degenerative disc disease of the lumbar spine, with chronic low back pain; bilateral degenerative joint disease of the knees, with chronic knee pain; morbid obesity; obstructive sleep apnea; left ventricular hypertrophy; history

---

[2] The ALJ amended his decision on May 2, 2013 merely to correct an erroneous reference to the exertional level from light to sedentary of one of the representative occupations, surveillance system monitor. R. 8-13. This amendment did not change the ALJ's finding that Plaintiff was not disabled because she could perform her past relevant work. See R. 24-26.

2

of hepatic cysts; and irritable bowel syndrome, with history of diverticulosis (20 CFR 404.1520(c)).

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

4. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform light work[3] as defined in 20 C.F.R. § 404.1567(b), with limitations. She is able to lift and carry 20 pounds occasionally and 10 pounds frequently. She is able to sit, stand, and walk six hours of an eight-hour workday. She may climb ramps and stairs frequently, but she may never climb ladders, ropes, or scaffolds. In addition, she is able to balance and stoop frequently, but she is able to kneel, crouch, and crawl only occasionally. Furthermore, she should avoid concentrated exposure to extreme cold and hazards. The claimant's past relevant work as a hospital admitting clerk, which was performed as semi-skilled work at the sedentary exertional level, did not require the performance of work-related activities precluded by the claimant's RFC. (20 C.F.R. § 404.1565).

R. 19-26. Because the ALJ determined that Plaintiff could perform her past relevant work, the sequential evaluation process may stop, see 20 C.F.R. §§ 404.1520(a)(4)(iv). Here, the ALJ also found that other jobs exist in the national economy that Plaintiff could have performed, see 20 CFR §§ 404.1569, 404.1569(a). R. 24-26. Therefore, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from October 5, 2006, through December 31, 2011, the date last insured (20 CFR § 404.1520(f))." R. 26.

---

[3]"Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

When the Appeals Council denied Plaintiff's request for review on August 27, 2012, R. 1-7, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to properly assess Plaintiff's RFC, (2) failed to properly determine that Plaintiff could perform her past relevant work, and (3) failed to determine that Plaintiff could perform her past relevant work as she described performing it. (See generally doc. no. 10 (hereinafter "Pl.'s Br.").) None of her arguments are persuasive, as explained below.

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

4

Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ's RFC Finding Is Supported by Substantial Evidence.

Plaintiff argues that the ALJ improperly evaluated her RFC in two ways. First, the ALJ erred by improperly assessing the credibility of her testimony regarding limitations due to her irritable bowel syndrome ("IBS"), diverticulosis, and hepatic cysts. Pl's Br., pp. 15, 18-19, 24-26. Second, the ALJ erred by improperly analyzing the

5

medical evidence of record to determine her RFC. Id. at 15, 18-19, 22-23, 26-28. The Court disagrees with both arguments and finds that the ALJ's decision is supported by substantial evidence.

### 1. The ALJ Properly Rejected Plaintiff's Testimony Concerning the Intensity, Pain, and Limiting Effects of Her Gastric Impairments.

Plaintiff argues that the ALJ improperly failed to discuss Plaintiff's testimony that her IBS, diverticulosis, hepatic cysts, gas, and incontinence caused her various limitations, including: (1) the possible need for frequent or unpredictable bathroom breaks; (2) the need to work in close proximity to the bathroom; (3) nausea and pain interfering with work; and (4) the need to go home if she had an accident. Pl's Br., p. 15, 18-19, 24-26.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (*per curiam*) (internal quotation marks and citations omitted).

Here, the ALJ not only discussed Plaintiff's allegations of problems related to IBS, diverticulosis, and hepatic cysts, but appropriately followed the Holt analysis when reaching the conclusion that Plaintiff's subjective complaints were not credible to the degree alleged. R. 21-23. The ALJ acknowledged the evidence of Plaintiff's underlying medical conditions of IBS, diverticulosis, and hepatic cysts. R 21-23. As the ALJ pointed out, Dr. Paul B. Schwartz diagnosed Plaintiff with IBS and hepatic cysts in 2007, and diverticulosis in 2010. R. 23, 274, 401-407.

Next, the ALJ relied on substantial evidence to conclude that Plaintiff's IBS, diverticulosis, and hepatic cysts are not as debilitating as Plaintiff claims. The ALJ noted that, from initial diagnosis, Dr. Schwartz has consistently found Plaintiff's hepatic cysts to be "stable." R. 23, 274-283, 330. While Plaintiff alleged at the hearing that gas and incontinence required her to be close to a bathroom, she reported to Dr. Schwartz in January 2010 merely that she "has some gas from time to time" and in July 2010 only

"rare episodes of incontinence," and in January 2011 Dr. Schwartz noted that "She continues to have occasional incontinence. This has been minimal in nature. She states it only happens periodically." R. 24, 38, 405, 407, 419. This is consistent with an "essentially unremarkable" sigmoidoscopy Dr. Swartz conducted in November 2010. R. 24, 419. Lastly, Dr. Schwartz merely prescribed Imodium for Plaintiff's symptoms. Id.

The ALJ rejected Plaintiff's subjective complaints after thoroughly evaluating the evidence in the record and properly considering Plaintiff's testimony under the Holt standard. Because he provided explicit and adequate reasons for finding Plaintiff's testimony not to be credible, the ALJ's credibility determination is supported by substantial evidence. Foote, 67, F.3d at 1562.

### 2. The ALJ Properly Analyzed the Medical Evidence of Record to Determine Plaintiff's RFC.

Next, Plaintiff contends that the ALJ failed to properly analyze the medical evidence regarding Plaintiff's limitations in walking, standing and sitting, when he made his RFC determination. Pl's Br., pp. 15, 18-19, 22-23, 26-28. First, Plaintiff contends that the RFC determination is incompatible with the purported opinion of Dr. Arlon Jahnke, Plaintiff's treating physician, that Plaintiff "is unable to walk more than 100 feet without severe pain in her knees," which Plaintiff alleges the ALJ accorded "great weight" and cited as evidence Plaintiff could perform light work. Pl's Br., pp. 18-19, 26-28. Second, Plaintiff contends that the treatment notes of Dr. Roberto H. Barja from 2004-2008, are inconsistent with the ALJ's conclusion that Plaintiff would have no significant sitting limitation. Pl's Br., pp. 26-28. For the reasons discussed below, the Court finds that the ALJ properly analyzed the medical evidence of record, including the opinions of Dr. Jahnke and Dr. Barja, when determining Plaintiff's RFC. R. 21-24.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford, 363 F.3d at 1159 (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same).

Moreover, the ALJ has a duty to develop the facts of the case fully and fairly. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (*per curiam*) (citing Ford v. Sec'y of Health and Human Serv., 659 F.2d 66, 69 (5th Cir. 1981)). As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id. Furthermore, under Social Security Ruling ("SSR") 96-8p, the determination of RFC is reserved to the ALJ and is based on all the relevant medical and other evidence in the record. SSR 96-8p, 1996 WL 374184, at *2 (1996); see also 20 C.F.R. § 404.1545(a).

### a. The ALJ Properly Evaluated Dr. Jahnke's Treatment Records When Determining Plaintiff's Ability to Walk.

Here, the ALJ acknowledged Plaintiff's history of bilateral knee pain, beginning in 2001 with treatment by Dr. Barja for a left knee meniscal tear in 2001. R. 22. The ALJ also explained that, although Dr. Jahnke noted in March 2011 that Plaintiff was unable to walk more than about 100 feet without severe pain in her knees, Dr. Jahnke diagnosed her with only "moderate osteoarthritis" and determined that Plaintiff exhibited "minor limitations of motion." R. 23, 428. Lastly, the ALJ noted that Dr. Jahnke recommended Plaintiff progress in her activities as tolerated. R. 23, 427.

Plaintiff asserts the ALJ's RFC determination is incompatible with Dr. Jahnke's opinion concerning Plaintiff's walking limitations due to her knee problems. Specifically, Plaintiff complains that there is an inconsistency between (1) the ALJ giving great weight to the opinion of Dr. Jahnke, including his opinion that Plaintiff "is unable to walk more than 100 feet without severe pain in her knees;" and (2) the ALJ's RFC determination that Plaintiff was able "to perform light work as defined in 20 CFR 404.1567(b)" and "is able to sit, stand and walk six hours of an eight-hour workday." Pl's Br., pp. 18-19, 26-28; R. 21. The Court disagrees for two reasons.

First, careful analysis of the ALJ's decision shows that the ALJ appropriately followed the aforementioned Holt analysis and rejected the limitation of walking no more than 100 feet as a subjective complaint by Plaintiff that was not credible to the degree alleged, and not supported by the weight of the medical evidence. R. 23. The ALJ acknowledged Plaintiff's history of bilateral knee pain, beginning in 2001 with treatment by Dr. Barja for a left knee meniscal tear in 2001, R. 22, but relied on substantial evidence to find that functional limitations related to the knee impairment "are not

substantial in nature," R. 23. Indeed, although Dr. Jahnke noted in March 2011 that Plaintiff complained of being unable to walk more than about 100 feet without severe pain in her knees, Dr. Jahnke also diagnosed her with only "moderate osteoarthritis" and determined that Plaintiff exhibited "minor limitations of motion." R. 23, 428. Moreover, it is clear that Dr. Jahnke's statement about Plaintiff's inability to walk more than about 100 feet without severe pain was merely a recitation of Plaintiff's subjective complaints about pain. Indeed, in a statement immediately following this recitation, Dr. Jahnke explained that Plaintiff "describes a great deal of pain *subjectively* with ambulation." R. 428 (emphasis added). Lastly, the ALJ noted that Dr. Jahnke recommended Plaintiff progress in her activities as tolerated, which further supports the conclusion that Dr. Jahnke believed Plaintiff was substantially limited in walking only to the extent of her subjective complaints of pain. R. 23, 427.

Additionally, the ALJ pointed out that throughout her treatment with Dr. Todd D. Cable, Plaintiff had not exhibited problems with walking. From December 2008 through April 2011, Dr. Cable consistently found that her gait appeared fairly normal and her upper and lower extremity strength and sensation were intact. R. 23, 348-354, 408, 411, 413-416, 420-422.[4]

Lastly, the ALJ also relied on the November 3, 2008 range of motion questionnaire and medical source statement of Dr. J. Marc Guitton, Plaintiff's treating physician, and the physical assessment of Dr. R. Paul Crank, Jr., a state agency medical consultant, which is supported by Dr. Guitton's statement. R. 24, 312-14. Dr. Guitton

---

[4]Relatedly, as will be discussed *supra* section III.A.2.b, with respect to her back pain, Plaintiff also reported as much as fifty percent pain relief from injections, and steroid injections in March 2011 relieved her pain enough for her to travel to Puerto Rico and back without requiring an injection at her next appointment with Dr. Cable in April 2011. R. 23, 408, 420-21.

11

opined that Plaintiff had normal range of motion in her: bilateral straight leg raising; bilateral hip abduction, extension, and internal and external rotation; bilateral knee extension; and bilateral ankle and foot inversion. R. 312-13. Dr. Guitton also noted that Plaintiff ambulated independently without the use of an assistive device and did not list any functional limitations. R. 314. Relying on the entire medical source statement, Dr. Crank found that Plaintiff could stand and/or walk for a total of about 6 hours in an 8-hour workday. R. 24, 316. Based on all of this substantial medical evidence, the ALJ found that Plaintiff had the RFC to perform light work and was "able to sit, stand, and walk six hours of an eight-hour workday." R.

Perhaps more importantly, the ALJ properly determined that Plaintiff could return to her past relevant work, which the VE testified was "semiskilled work that is generally performed at the sedentary exertional level." R. 48-50. Because sedentary work does not require the ability to walk more than 100 feet, the ALJ's finding that Plaintiff can perform her past relevant work would stand even if the ALJ had erred by finding that Plaintiff had no significant walking limitations. See 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.") Indeed, the ALJ's initial and primary holding was that Petitioner was not disabled because she could perform her sedentary past relevant work and only secondarily did he find that she could perform light

work. Accordingly, for all of the above reasons, the ALJ's RFC determination was supported by substantial evidence. Foote, 67, F.3d at 1562; Cowart, 662 F.2d at 735.

### b. The ALJ Properly Evaluated Dr. Barja's Treatment Records When Determining Plaintiff's Ability to Sit.

The ALJ also properly analyzed Dr. Barja's treatment notes when determining not to include any significant sitting limitation in Plaintiff's RFC and instead find that Plaintiff could sit for a total of six hours in an eight-hour workday. R. 21-24. The ALJ acknowledged Plaintiff's history of chronic back pain beginning with a diagnosis of degenerative disc disease of the lumbar spine in 2002, and continuing through treatment notes with Dr. Barja, who treated Plaintiff from 2004-2008, and Dr. Todd D. Cable, who treated Plaintiff from 2008 through the date last insured. R. 22.

However, the ALJ properly relied on substantial evidence that Plaintiff's back condition has improved more recently, thereby showing that the severe physical impairments "are not substantial in nature." R. 23. In contrast to the older treatment records from Dr. Barja cited by Plaintiff, the ALJ noted that throughout her treatment with Dr. Cable, Plaintiff has not exhibited problems sitting, despite any observed reduction in spinal range of motion. R. 23. In March and July 2009, December 2010, and March and November 2011, Dr. Cable found that Plaintiff had a normal ability to get on and off the examination table without difficulty. R. 23, 348, 351, 408, 411, 421. Moreover, Plaintiff has reported as much as fifty percent pain relief from injections, and steroid injections in March 2011 relieved her pain enough for her to travel to Puerto Rico and back without requiring an injection at her next appointment with Dr. Cable in April 2011. R. 23, 408, 420-21.

The ALJ also relied on the November 2008 statement of Dr. Guitton and the physical assessment of Dr. Crank. R. 24, 312-14. As discussed *supra* section III.A.1.a, Dr. Guitton did not list any functional limitations and opined that Plaintiff had normal range of motion in her: bilateral straight leg raising; bilateral hip abduction, extension, and internal and external rotation; bilateral knee extension; and bilateral ankle and foot inversion. R. 312-14. Relying on the entire medical source statement, Dr. Crank found that Plaintiff could sit for a total of about six hours in an eight-hour workday. R. 24, 316.

In sum, the ALJ properly determined Plaintiff's RFC after considering all the evidence of record, including the treatment notes of Drs. Jahnke and Barja, in accordance with SSR 96-8p. Because he developed the facts of the case fully and fairly and stated specifically and in an adequate manner the weight he accorded to each item of evidence, the ALJ's determination of the RFC is supported by substantial evidence. Todd, 736 F.2d at 642; Cowart, 662 F.2d at 735.

### B. The ALJ Properly Determined that Plaintiff Could Perform Her Past Relevant Work.

Plaintiff argues that the ALJ failed to (1) consider Plaintiff's reasons for her inability to meet past work requirements, including her inability to work due to her problems standing, walking, sitting, and her bowel problems; and (2) explain why these conditions failed to support her statements why she was unable to perform her past relevant work. Pl's Br., pp. 17-19. Plaintiff argues that the ALJ simply concluded, without rationale, that Plaintiff could perform her past work, in violation of SSR 82-62 and Fourth Circuit precedent that requires an ALJ to adequately explain his decision. See R. 20-24; Deloach v. Heckler, 712 F.2d 148, 150 (4th Cir. 1983); see also Murphy v. Brown, 810 F.2d 433, 437 (4th Cir. 1987).

SSR 82-62 states:

> Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62, 1982 WL 31386, at *3 (1982). Moreover, SSR 82-62 goes on to state that:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Id. at 4.

Here, the ALJ complied with SSR 82-62 and properly determined that Plaintiff could perform her past relevant work. As discussed supra section III.A, the ALJ properly reviewed the medical evidence of record in determining Plaintiff's RFC and her ability to perform her past relevant work. In so doing, the ALJ considered Plaintiff's testimony as to why she could no longer meet her work requirements, which the ALJ found not fully credible. R. 21-24.

The ALJ then compared Plaintiff's RFC to the RFC required for Plaintiff's past relevant work as actually and generally performed. R. 24. Indeed, the ALJ noted the VE's testimony that Plaintiff's past relevant work was "performed as semi-skilled work at the sedentary exertional level." R. 24, 49. Further, the VE indicated that the past

15

relevant work was performed at the sedentary exertional level in interrogatories. R. 228. Therefore, despite Plaintiff's assertion that the ALJ did not explicitly indicate his acceptance of the VE's description of the job as sedentary, see Pl's Br., p. 20, the ALJ unmistakably accepted the VE's description when comparing Plaintiff's RFC with the physical and mental demands of her past relevant work as proffered by the VE, and found that Plaintiff "was able to perform it as actually and generally performed." R. 24.

In sum, substantial evidence exists that the ALJ properly determined Plaintiff could perform her past relevant work. Richardson v. Comm'r of Soc. Sec., 517 F. App'x 886, 888 (11th Cir. 2013) (*per curiam*) (affirming ALJ's decision where "there was an evidentiary basis for determining the requirements of [Plaintiff's] past relevant work, and the decision that [she] could perform her past relevant work is supported by substantial evidence").

### C. The ALJ Properly Determined Plaintiff Could Perform Her Past Relevant Work as It Is Generally Performed.

Plaintiff's last argument is that the ALJ did not properly address Plaintiff's past relevant work as she actually described performing it. However, the ALJ may determine that Plaintiff is not disabled based on a finding that she can perform her past relevant work as it is generally performed in the national economy. See Pl's Br., p. 20-24; 20 C.F.R. § 404.1560(b)(2) ("a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy"); see also Waldrop v. Comm'r of Soc. Sec., 379 F. App'x 948, 953 (11th Cir. 2010) (*per curiam*) ("the ALJ's determination that

Waldrop could still perform her past relevant work as a human resources clerk, as it is performed in the general economy, is supported by substantial evidence."). Accordingly, Plaintiff's argument is without merit.

IV. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 11th day of February, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE